IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-01200-PAB

MARIA TERESA RODRIGUEZ ALFARO,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility,
GEORGE VALDEZ,[1] in his official capacity as Field Office Director, Denver Field Office of U.S. Immigration and Customs Enforcement,
TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,
MARKWAYNE MULLIN, in his official capacity as Secretary of U.S. Department of Homeland Security, and
TODD BLANCHE,[2] in his official capacity as Acting Attorney General of the United States,

     Respondents.

---

**ORDER**

---

     This matter comes before the Court on petitioner Maria Teresa Rodriguez Alfaro's Petition for Writ of Habeas Corpus [Docket No. 1].  Respondents filed a response.  Docket No. 7.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), George Valdez is automatically substituted as a party in this action.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche is automatically substituted as a party in this action.

## I. BACKGROUND[3]

Petitioner is a 42 year old citizen of Mexico.  Docket No. 1 at 5, ¶ 21.  On or about April 1, 1992, when she was nine years old, petitioner entered the United States near Calexico, California, without being admitted or paroled.  *Id.* at 5-6, ¶¶ 21, 25.  From 2013 to 2023, the Department of Homeland Security ("DHS") granted petitioner deferred action for childhood arrivals ("DACA"), which she lost after making an error in her online application to renew it.  *Id.* at 6, ¶ 26.  Petitioner is a business owner and has no criminal history.  *Id.*, ¶¶ 24, 27.

On July 29, 2025, petitioner was encountered by immigration officials when she drove her brother to a court hearing related to a traffic violation.  *Id.*, ¶ 22.  After this encounter, petitioner was arrested, detained, and put in removal proceedings through the filing of a Notice to Appear.  *Id.*, ¶ 23.  On November 8, 2025, an immigration judge granted petitioner's application for cancellation of removal, noting the hardship petitioner and her three children would face if petitioner was removed.  *Id.* at 6, 31-37, ¶ 28.  On December 8, 2025, DHS appealed that decision.  *Id.* at 7, ¶ 29.  On January 25, 2026, the immigration judge granted petitioner bond in the amount of $1,500.  *Id.*, ¶ 30.  On January 26, 2026, DHS invoked the automatic stay provision at 8 C.F.R. § 1003.19(i).  *Id.*, ¶ 31.  On February 22, 2026, the immigration judge amended the bond order to again grant bond in the amount of $1,500.  *Id.*, ¶ 32.  On February 23, 2026, DHS filed an EOIR-43, Notice of ICE Intent to Appeal Custody Redetermination, of the amended bond order.  *Id.*, ¶ 33.  Petitioner has remained detained at the Denver Contract Detention Facility since she was first arrested on July 29, 2025.  *Id.* at 4, ¶ 15.

---

[3] The following facts are taken from petitioner's habeas petition, Docket No. 1, and are undisputed unless otherwise noted.

On March 23, 2026, petitioner filed a petition for writ of habeas corpus.  Docket No. 1.  She brings a claim under the Immigration and Nationality Act ("INA"), a substantive due process claim, and a procedural due process claim.  *Id.* at 10-15, ¶¶ 48-84.

## II.  ANALYSIS

Under 8 U.S.C. § 1226(a), noncitizens may be detained pending a decision whether they are to be removed from the United States.  8 U.S.C. § 1226(a).  Noncitizens detained pursuant to § 1226 have the right to seek release on bond.  8 U.S.C. § 1226(a)(2).  DHS may appeal a bond determination to the Board of Immigration Appeals ("BIA").  8 C.F.R. § 1003.19(f).  Moreover, the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) states that:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).  Petitioner argues that detention is not authorized by § 1226(a) after an immigration judge grants bond, even DHS appeals the bond determination.  Docket No. 1 at 10, ¶ 48.  Respondents, on the other hand, argue that the bond ruling has no effect once the automatic stay provision has been invoked, thus permitting continued detention under § 1226(a).  Docket No. 7 at 5-6.  The Court need not decide this issue because it finds that petitioner's detention violates her procedural due process rights under the Fifth Amendment.  *See M.P.L. v. Arteta*, 2025 WL 3288354, at *12

(S.D.N.Y. Nov. 25, 2025) (refusing to determine whether invoking the automatic stay provision violated the INA because the petitioner's detention violated due process).

Petitioner argues that the correct method for determining whether her due process rights have been violated is by applying the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Docket No. 1 at 14, ¶ 73. Conversely, respondents argue that the "notice and opportunity to be heard" test should be utilized. Docket No. 7 at 8. Respondents derive this test from a recent Supreme Court case analyzing the constitutionality of removal under the Alien Enemies Act, 50 U.S.C. § 21, not the constitutionality of continued detention, in which the Court stated that "detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation and internal quotations omitted). Respondents argue that the appeals process regarding her bond constitutes sufficient due process in this case, and provides her with both notice and the opportunity to be heard. Docket No. 7 at 7-8.

Respondents assert that "[t]he Supreme Court has never used the framework set forth in *Eldridge* to evaluate due process for noncitizens." *Id.* at 8. Respondents cite *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), for the proposition that the procedural due process analysis regarding noncitizens is deferential to the government. *Id.* Yet, in *Landon*, the Supreme Court applied the *Mathews* factors to evaluate whether a noncitizen received appropriate due process—the very thing respondents claim the Supreme Court has never done. *Landon*, 459 U.S. at 34. Respondents also cite *Miranda v. Garland*, 34 F.4th 338, 362, 364 (4th Cir. 2022), for the proposition that petitioner is receiving sufficient notice through the regulatory process for evaluating her

4

bond.  Docket No. 7 at 8.  In *Miranda*, however, the Fourth Circuit utilized the *Mathews* test to evaluate a due process challenge to a noncitizen detained under § 1226(a).  *See Miranda*, 34 F.4th at 358-59 ("Both [petitioner] and the government agree that the *Mathews* test governs.  Furthermore, the First and Ninth Circuits have employed the *Mathews* balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a). . . .  Therefore, we will apply it to [petitioner's] due process claims.").

Petitioner accurately notes that this case mirrors *Merchan-Pacheo v. Noem*, No. 25-cv-03860-SBP, 2026 WL 88526 (D. Colo. Jan. 12, 2026), a case in this district analyzing whether the use of the automatic stay provision violated the petitioner's due process rights.  Docket No. 1 at 3, ¶¶ 9-10.  In *Merchan-Pacheo*, 2026 WL 88526, at *8, the court noted "the plethora of cases applying the *Mathews* factors in substantively similar or identical contexts and evaluate[d] whether Petitioner's continued detention [was] justified pursuant to those factors."  The Court will follow the weight of authority and analyze petitioner's procedural due process claim under the test set out in *Mathews*.

Under *Mathews*, courts weigh the following three factors in evaluating due process claims: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

Petitioner argues that she has a significant private interest at stake, namely, her interest in physical freedom.  The interest in being free from physical detention "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that freedom from physical restraint "lies at the heart of the liberty that [the Due Process] Clause protects.").  Yet, petitioner has been in physical detention for over eight months, despite not having been accused of any crime.  Respondents argue that petitioner's interest is not significant because her continued detention might not be prolonged.  Docket No. 7 at 9.  Specifically, respondents note that the automatic stay provision expires after 90 days if the BIA has not yet ruled.  *Id.*  However, there are several possibilities for the detention being extended after the 90-day period lapses, including the stay being extended due to custody proceedings.  *Rivas v. Baltazar*, No. 26-cv-00442-SKC, 2026 WL 444732, at *1 n.2 (D. Colo. Feb. 17, 2026); *see also* 8 C.F.R. § 1003.6(c)(5)-(d).  Thus, petitioner's detention may continue for longer than 90 days.  Moreover, even if petitioner would only be detained for an additional 90 days, the Court finds that freedom from 90 days of physical detention still constitutes a significant private interest, particularly in light of the fact that petitioner has already been detained for over eight months.  Thus, the first *Mathews* factor weighs in favor in petitioner.  *See Merchan-Pacheo*, 2026 WL 88526, at *14 (finding that the first *Mathews* factor weighed in favor of petitioner after the invocation of the automatic stay provision); *Rivas*, 2026 WL 444732, at *3 (same).

Second, there is a high risk of erroneous deprivation of petitioner's liberty interest.  "The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing." *Merchan-*

6

*Pacheo*, 2026 WL 88526, at *15 (citation and internal quotations omitted).  Here, an immigration judge has twice determined that petitioner is not a significant flight risk or danger to the community, and has granted bond in the amount of $1,500.  Docket No. 1 at 7, ¶¶ 30, 32.  However, the automatic stay provision allows DHS to unilaterally stay the bond determination, despite not requiring "DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits."  *Merchan-Pacheo*, 2026 WL 88526, at *15 (citing 8 C.F.R. § 1003.19(i)(2)).  Accordingly, the second *Mathews* factor weighs in favor of petitioner.

Finally, respondents argue that the government has a legitimate interest in maintaining custody over petitioner because "release could render the review process illusory."  Docket No. 7 at 10.  Specifically, respondents argue that many noncitizens who are released from custody do not show up to scheduled removal hearings after their release.  *Id.*  While the government has an interest in preventing flight risks, an immigration judge has already determined that a $1,500 bond would effectively ameliorate that risk.  As one court in this district noted, "this interest rings hollow given that . . . this automatic stay is being applied only to those individuals 'who an Immigration Judge has determined [*do*] *not pose a public safety threat or a risk of flight* sufficient to warrant continued confinement.'"  *Rivas*, 2026 WL 444732, at *4 (quoting *Merchan-Pacheo*, 2026 WL 88526, at *16).  Thus, the third *Mathews* factor weighs in favor of petitioner.  Accordingly, each *Mathews* factor weighs in favor of petitioner, and the Court finds that petitioner's continued custody violates her procedural due process

rights.[4]  Notably, this finding follows the weight of authority, since "[a]t least 50 district court decisions across the United States . . . have found that DHS's application of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) violates a non-citizen's due process under the Fifth Amendment."  *M.P.L.*, 2025 WL 3288354, at *7 (collecting cases).

## III.  CONCLUSION

Therefore, it is

**ORDERED** that petitioner Maria Teresa Rodriguez Alfaro's Petition for Writ of Habeas Corpus is **GRANTED**.  It is further

**ORDERED** that, upon petitioner posting the $1,500 bond set by the immigration judge, respondents shall immediately release petitioner from custody.  It is further

**ORDERED** that, on or before **April 13, 2026**, the parties shall file a status report informing the Court whether bond was posted and whether petitioner remains in custody.

DATED April 7, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[4] Because the Court will grant habeas relief on the procedural due process claim, it need not address petitioner's substantive due process claim.  *See Merchan-Pacheo*, 2026 WL 88526, at *16 ("Petitioner also asserts that the automatic stay violates his substantive due process rights.  Because the court has already awarded Petitioner the relief he requests, the court need not reach this issue.").